# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

* * * * * * * * * * * * * * * * * * * * * *
K.O., parent of *
A.F., a minor, * No. 13-472V
* Special Master Christian J. Moran
Petitioner, *
*
v. * Filed: November 30, 2016
*
SECRETARY OF HEALTH *
AND HUMAN SERVICES, * Redaction, adult petitioner for
* minor child
Respondent. *
* * * * * * * * * * * * * * * * * * * * * *

Ronald C. Homer and Meredith Daniels, Conway, Homer & Chin-Caplan, P.C., Boston, MA, joined by Mary Ellen Callahan and Adam G. Unikowsky, Jenner & Block, Washington, DC, for petitioner;
Heather L. Pearlman, United States Dep't of Justice, Washington, DC, for respondent.

**PUBLISHED ORDER GRANTING MOTION FOR REDACTION**[1]

K.O. filed a petition on behalf of her minor son, A.F., alleging that the pneumococcal conjugate ("PCV") vaccine caused him to develop opsoclonus myoclonus syndrome ("OMS"). Presently pending are motions K.O. filed to redact her name from two decisions – a decision regarding entitlement and a decision regarding attorneys' fees and costs. K.O. seeks to replace her name with initials. For the reasons explained below, this motion is GRANTED.

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this order on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

**Public Access to Information about Petitioners in the Vaccine Program**

The history of public access to information contained in court decisions and the history of the creation of the Vaccine Program[2] provide a context for K.O.'s motions to redact. Both histories suggest that redaction of a litigant's name is available in relatively limited circumstances.

In American jurisprudence, the public can generally access court documents. Nixon v. Warner Comm. Inc., 435 U.S. 559, 597 (1978). As part of this country's inherited traditions, Congress may be presumed to know this principle.

In the mid-1980s, Congress investigated vaccines because of concerns about their safety and to stabilize the market for manufacturers. Bruesewitz v. Wyeth, LLC., 562 U.S. 223, 226 (2011). In the 99th Congress, competing proposals were introduced. See Figueroa v. Sec'y of Health & Human Servs., 715 F.3d 1314, 1323 (Fed. Cir. 2013), Vijil v. Sec'y of Health & Human Servs., No. 91-1132V, 1993 WL 177007, at *4-5 (Fed. Cl. Spec. Mstr. May 7, 1993).

One of these proposals, which was introduced on April 2, 1985, was Senate Bill 827. S. 827 would have created a compensation program located in the District Court for the District of Columbia in which special masters would preside. S. 827, 99th Cong., 1st sess. § 2104(b), § 2104(d)(1) (1985). In addition to a compensation program, S. 827 contained provisions to improve the safety of vaccines. However, the first session of the 99th Congress adjourned without acting on any of the proposed legislation.

In the second session of the 99th Congress, the House and Senate considered different bills. The version of S. 827 from September 24, 1986 proposed to improve the safety of vaccines. S. 827, 99th Cong., 2d sess. (1986). It appears that S. 827 did not include a compensation program.

However, the legislation that Congress eventually enacted did contain a compensation program. Congress placed adjudication of claims in the vaccine compensation program in the district courts. Pub. L. 99-660 § 2112(a). In this legislation, provisions related to discovery and disclosure of information were

[2] For information about the legislation that created the Vaccine Program, this order draws upon a summary provided in Lainie Rutkow et al., Balancing Consumer and Industry Interests in Public Health: The National Vaccine Injury Compensation Program and Its Influence During the Last Two Decades, 111 Penn St. L. Rev. 681 (2007).

combined in one section.  Id. at § 2112(c), codified at 42 U.S.C. § 300aa–12(c)(2) (1988).  Congress's selection of district courts with their tradition of openness to the public suggests that Congress intended for the normal rules about access to judicial decisions to apply.  Castagna v. Sec'y of Health & Human Servs., No. 99-411V, 2011 WL 4348135, at *1 (Fed. Cl. Spec. Mstr. Aug. 25, 2011).

In 1987, Congress simultaneously funded the Vaccine Program and amended the Vaccine Act.  The 1987 amendments did not vary the disclosure provisions.  However, in 1987, amendments changed the location from the district courts to the Claims Court.  Pub. L. 100-203 § 4307(1); see also Milik v. Sec'y of Health & Human Servs., 822 F.3d 1367, 1375 (Fed. Cir. 2016); Stotts v. Sec'y of Health & Human Servs., 23 Cl. Ct. 352, 358 n.7 (1991).

The Vaccine Program became effective on October 1, 1988.  Pub. L. 100-203 § 4302.  As initially conceived, special masters were issuing reports, subject to de novo review by judges of the Claims Court.  See 42 U.S.C. § 300aa–12(d) (1988).  In this context, reports from special masters and decisions from Claims Court judges started to become available to the public.  E.g. Bell v. Sec'y of Health & Human Servs., 18 Cl. Ct. 751 (1989) (reproducing special master's report); Philpott v. Sec'y of Health & Human Servs., No. 88-20V, 1989 WL 250073 (Cl. Ct. Spec. Mstr. August 4, 1989).

Congress found that the parties were too litigious in the early years of the Program.  H.R. Rep. No. 101-386, at 512 (1989) (Conf. Rep.), reprinted in 1989 U.S.C.C.A.N. 3018, 3115.  Congress amended the Vaccine Program in 1989, giving special masters the authority to issue decisions, which could be subject to a motion for review.  Pub. L. 101-239 § 6601(h), codified at 42 U.S.C. § 300aa–12(d) and (e).

Congress also added a provision allowing limited redaction of decisions of special masters.  Pub. L. 101-239 § 6601(g)(2).  The reason Congress added this provision is not clear.  See Anderson v. Sec'y of Health & Human Servs., No. 08-396V, 2014 WL 3294656, at *2 n.7 (Fed. Cl. Spec. Mstr. June 4, 2014).

Although Congress authorized redaction of decisions, few litigants requested redaction for many years.  Special masters tended to allow redaction without much analysis.  After a surge in requests for redaction, the then-Chief Special Master issued an order generally narrowing redaction.  Langland v. Sec'y of Health & Human Servs., No. 07-36V, 2011 WL 802695 (Fed. Cl. Spec. Mstr. Feb. 3, 2011).  On a motion for review, the Court of Federal Claims endorsed the special master's analysis regarding redaction in a brief footnote.  109 Fed. Cl. 421, 424 n.1 (2013).

The Court of Federal Claims analyzed the special masters' position regarding redaction more extensively in W.C. v. Sec'y of Health & Human Servs., 100 Fed. Cl. 440, 456-61 (2011), aff'd on nonrelevant grounds, 704 F.3d 1352 (Fed. Cir. 2013). W.C. disagreed with the approach taken and asserted that the Freedom of Information Act ("FOIA") was a basis for evaluating redaction requests.

Shortly after W.C., the then Chief Special Master issued another order regarding redaction. Castagna explored the topic in more depth and, again, found redaction was limited to narrow circumstances. 2011 WL 4348135.

Recently, the Court of Federal Claims has found special masters were not arbitrary and capricious in either denying redaction, or permitting redaction. Lamare v. Sec'y of Health & Human Servs., 123 Fed. Cl. 497 (2015), R. K. on behalf of A.K. v. Sec'y of Health & Human Servs., 125 Fed. Cl. 276 (2016), appeal docketed, No. 2016-1609 (Fed. Cir. Feb. 23, 2016).

Against this background, K.O. filed her motions to redact.

## Procedural History Leading to the Motions to Redact

On July 12, 2013, K.O. filed a petition on behalf of her minor son, A.F., alleging that the PCV vaccine caused him to develop OMS. In accord with Vaccine Rule 16(b), K.O. disclosed only her son's initials, not his name.

Once the Secretary has received a petition, the Secretary "shall publish notice of such petition in the Federal Register." 42 U.S.C. § 300aa–12(b)(2). In this instant action, for K.O., the Secretary did so on September 5, 2013. 78 Fed. Reg. 54663-01.

The remainder of the procedural history was also relatively uneventful. After appropriate development of facts, expert opinions, and legal argument, the case proceeded to a hearing held on August 10, 2015. After additional briefing, a decision found that K.O. had not established entitlement to compensation. Entitlement Decision, issued July 7, 2016.

While the case was still pending, K.O. filed a motion for attorneys' fees and costs on June 20, 2016. The motion led to an award of attorney's fees and costs on an interim basis. Fees Decision, issued July 25, 2016.

Neither the Entitlement Decision nor the Fees Decision has been made available to the public. The public's access to these two decisions depends upon

the outcome of K.O.'s motion to redact. On July 21, 2016, K.O. filed a motion to redact the entitlement decision and on August 8, 2016, she filed a motion to stay publication of the fees decision.

K.O.'s July 21, 2016 motion to redact requested that her name be reduced to initials. Her motion was accompanied by a 20-page memorandum. K.O. also submitted a three-page affidavit, explaining her efforts to keep her young son's medical condition private. Exhibit 21. K.O. also filed an affidavit from her son's pediatrician, who advocated in favor of redaction. Exhibit 22.

The Secretary filed a response. After reviewing the legal basis for any motion for redaction including Langland and W.C., the government refrained from taking any position. The government's response concluded:

> The Department of Justice and the Department of Health and Human Services take very seriously their legal duties to protect private information provided by petitioners through Program proceedings… . Respondent does not believe it is appropriate to advocate in favor of disclosure of a petitioner's information in a particular case, including this one, but rather defers to the special master's judgment as to whether petitioner's Motion should be granted, applying the analytical framework discussed above.

Resp't's Resp., filed Aug. 5, 2016, at 4-5.

K.O. filed a brief reply on August 15, 2016. She generally repeated arguments from her initial motion.

On October 11, 2016, an oral argument was held. Following this argument, K.O. submitted additional material, although no additional material had been requested. K.O. submitted another affidavit, this one from her son's treating neurologist. Exhibit 23. K.O. also submitted another legal memorandum. With that submission, K.O.'s motions for redaction are ready for adjudication.

**Standards for Adjudication**

For all issues, including evaluating a motion for redaction, the special master's duty "is to apply the law." Althen v. Sec'y of Health & Human Servs., 418 F.3d 1274, 1280 (Fed Cir. 2005). With respect to issues of public access to judicial decisions, the preferences of the parties are not binding. Reidell v. United

States, 47 Fed. Cl. 209 (2000) (declining to vacate underlying decision as parties requested in settling the case). The Seventh Circuit (Posner, J.) has emphasized the need for trial courts to make their own assessment of requests to proceed anonymously and not to defer to the parties:

> [W]e would be remiss if we failed to point out that the privilege of suing or defending under a fictitious name should not be granted automatically even if the opposing party does not object. The use of fictitious names is disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify a departure from the normal method of proceeding in federal courts.

Doe v. Blue Cross & Blue Shield United of Wisconsin, 112 F.3d 869, 872 (7th Cir. 1997).

For redaction, the starting point is the Vaccine Act. Congress provided:

> a decision of a special master or the court in a proceeding shall be disclosed, except that if the decision is to include information –
>
> (i) which is trade secret or commercial or financial information which is privileged and confidential, or
>
> (ii) which are medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy,
>
> and if the person who submitted such information objects to the inclusion of such information in the decision, the decision shall be disclosed without such information.

42 U.S.C. § 300aa–12(d)(4)(B). As previously mentioned, Congress added this provision to the Vaccine Act as part of the 1989 amendments. Pub. L. 101-239 § 6601(g)(2). In the ensuing 25 years, the Federal Circuit has not had an occasion to interpret this statutory provision. Furthermore, the associated Vaccine Rule, Vaccine Rule 18(b), simply mirrors the statute. Thus, there is an absence of binding authority about the meaning of the Vaccine Act's disclosure provision.

## Analysis

K.O. relies upon two arguments in favor of redaction: (a) that she meets the requirements of redaction as set forth in W.C. and pursuant to FOIA and (b) that she has demonstrated a specific showing warranting redaction.

A. K.O.'s reliance on W.C. and FOIA is not persuasive.

K.O.'s first argument in favor of redaction is an argument that she satisfies the standards for redaction announced in W.C. However, as an order from the Court of Federal Claims, W.C. is only persuasive (not binding) precedent in this case and the persuasiveness of W.C. has been mixed. In some cases, special masters have followed W.C. See, e.g., Ranjbar v. Sec'y of Health & Human Servs., No. 15-905V, 2016 WL 4191127 (Fed. Cl. Spec. Mstr. June 21, 2016) (redacting decision awarding damages to initials); C.S. v. Sec'y of Health & Human Servs., No. 07-293V, 2013 WL 4780019 (Fed. Cl. Spec. Mstr. Aug. 19, 2013) (authorizing redaction). However, special masters have also disagreed with W.C. or narrowly limited W.C. to its facts. See, e.g., Anderson, 2014 WL 3294656, at *6 (disagreeing with usefulness of FOIA); House v. Sec'y of Health & Human Servs., No. 99–406V, 2012 WL 402040, at *5-6 (Fed. Cl. Spec. Mstr. Jan. 11, 2012) (declining to grant redaction and rejecting petitioner's argument that the Secretary bears the burden to show a compelling public interest to justify release of medical information); Pearson v. Sec'y of Health & Human Servs., No. 03–2751V, 2011 WL 4863717, at *5 (Fed. Cl. Spec. Mstr. Sept. 22, 2011) (declining to grant redaction and stating "Petitioner's preference to keep his damages award private is not a sufficient reason to satisfy the [statutory] criteria and justify redaction in this case"). Given this divergent treatment of W.C., it was incumbent on K.O. to establish the soundness of W.C. in her briefing. But, she did not.

W.C. criticized the special master for beginning the analysis of whether decisions should be redacted with a general presumption that decisions of judicial officers are open to the public. W.C. states an analogy to the openness of judicial files is "inapposite." 100 Fed. Cl. at 460.[3] However, W.C. did not account for the series of legislation that placed the Office of Special Masters within the federal

[3] While traditional litigation in courts differs in some respects from litigation in the Office of Special Masters, most differences such as speedier resolution are not about the public's access to information. The obvious difference – the public cannot access material kept by the Clerk's Office, see 42 U.S.C. § 300aa–12(d)(4) – is immediately set off by saying the public can access special masters' decisions.

judiciary. Under the presumption that Congress is assumed to be aware of background principles when enacting legislation, See Rhone Poulenc Agro, S.A. v. DeKalb Genetics Corp., 284 F.3d 1323, 1329 n.3 (Fed. Cir. 2002), it can be inferred that Congress's choice endorsed routine publication of decisions of special masters. See Anderson, 2014 WL 3294656, at *3; Castagna, 2011 WL 4348135, at *10.

Although W.C. did not discuss Congress's placing of the Office of Special Masters within the Claims Court, W.C. relied upon two other legislative acts. First, W.C. cited 42 U.S.C. § 300aa–25(c). 100 Fed. Cl. at 457-58. Second, W.C. cited a portion of legislative history, S. Rep. No. 99-483. Id. at 457. However, neither informs the analysis of whether special masters should redact petitioner's names from their decisions.

Section 25 is part of title 42, chapter 6A, subchapter XIX, part 2, subpart C, which is captioned "assuring a safer childhood vaccination program in United States." Congress directed the Secretary to gather information, and, in this context, forbad the Secretary from releasing names of people who supplied the information.

In contrast, the portion of the Vaccine Program that concerns special masters is found within title 42, chapter 6A, subchapter XIX, part 2, subpart A. This provision does not explicitly forbid special masters from including names of petitioners in their decisions. Congress's choice to prevent disclosure of identifying information in one subpart implies that a disclosure of the same information under a different subpart is permitted. See Figueroa, 715 F.3d at 1322-23 (discussing interpretive canon expressio unius est exclusion alteris).

Similarly, Senate Report No. 99-483, which W.C. cited, was associated with S. 827 as introduced on September 24, 1986. That version of S. 827 pertains to the Secretary's anticipated efforts to improve the safety of vaccines and did not contain a compensation program. See Castagna, 2011 WL 4348135, at *6 n.8. Thus, the legislative history associated with S. 827 appears to shed little light on whether a compensation program should redact decisions of judicial officers.

For these reasons, neither K.O. nor W.C. justifies turning away from the principle within the federal judiciary that promotes public access to decisions of special masters. Rather than look to analogues from traditional litigation, W.C. borrowed from FOIA, maintaining that the similarity in wording between one aspect of the Vaccine Act and one aspect of FOIA justified a holding that the statutes should be interpreted similarly. However, the similarity in wording becomes a more meaningful basis for analysis when two statutes are directed to the

same purpose. See Wachovia Bank v. Schmidt, 546 U.S. 303, 315-16 (2006) (refraining from applying the in pari materia canon for statutes addressing venue and subject matter jurisdiction); Erienbaugh v. United States, 409 U.S. 239, 243-44 (1972). But, FOIA and the Vaccine Act do not share a common purpose. Anderson, 2014 WL 3294656, at *7; House, 2012 WL 402040, at *6; but see C.S., 2013 WL 4780019, at *2-3. In addition, the portion of the Vaccine Act that contains the phrase "clearly unwarranted invasion of privacy" is connected to redaction of "medical files and similar files" only. 42 U.S.C. § 300aa–12(d)(4)(B). In the present case, K.O.'s name is not a medical file or something similar to a medical file.

Consequently, K.O.'s primary argument based upon W.C. and FOIA is not accepted. Therefore her alternative argument based upon Langland (or Castagna) must be considered.

B. Petitioner Has Demonstrated a Specific Showing Warranting Redaction to Initials

Alternatively, K.O. maintains that redaction is appropriate by making a "specialized showing." Pet'r's Mot. at 10-17. Here, although the test K.O. proposes needs further refinement, she has presented an adequate justification for redaction.

In federal courts, parties must identify themselves. Fed. R. Civ. Proc. 17(a). In the Court of Federal Claims, the requirement is the same. U.S. Ct. Fed. Claims, R. ("RCFC") 17. Nevertheless, parties in the federal courts may seek to proceed anonymously.

In evaluating whether certain Native Americans could present an amended complaint with some plaintiffs listed as "Does," the Court of Federal Claims borrowed from a Ninth Circuit case, Does I Thru XXII v. Advanced Textile Corp., 214 F.3d 1058, 1067 (9th Cir. 2000). Wolfchild v. United States, 62 Fed. Cl. 521, 553 (2004).[4] The Ninth Circuit's test from Advanced Textile is just one of multiple formulations of factors trial courts should consider in evaluating a request to proceed anonymously.[5] For other examples, see Doe v. Frank, 951 F.2d 320,

[4] Although Wolfchild cited Advanced Textiles favorably, W.C. stated that the Ninth Circuit's criteria can be "draconian." W.C., 100 Fed. Cl. at 459 n.21.

[5] These cases are not entirely on all fours with cases in the Vaccine Program because K.O.'s name appeared on her petition and the case was litigated in her name. Because detailed (…continued)

323 (11th Cir. 1992); K.W. v. Hotlzapple, 299 F.R.D. 438, 441 (M.D. Pa. 2014); Nat'l Ass'n of Waterfront Employers v. Chao, 587 F. Supp. 2d 90, 99 (D.D.C. 2008). While the precise wording might vary, the tests generally consider several factors including "the party's need for anonymity against the general presumption that parties' identities be available to the public and the likelihood of prejudice to the opposing party." Wolfchild, 62 Fed. Cl. at 553-54. These factors are analyzed in reverse order.

*Likelihood of prejudice to opposing party*. The Secretary knows the identity of A.F.'s mother. Redacting his mother's name to initials to prevent members of the public from learning this information would not harm the Secretary.

*Public interest in availability of decisions by judicial officers*. The right of the public to learn about decisions made by members of the judicial branch of their government is based, in part, on the right "to know who is using court facilities and procedures funded by public taxes." Doe v. Village of Deerfield, 819 F.3d 372, 377 (7th Cir. 2016); accord Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 189 (2d Cir. 2008).

Here, information about "who is using court facilities" is available to the public because the Secretary has disclosed this information in the Federal Register. The notice in the Federal Register provides the petitioner's name and the docket number. 78 Fed. Reg. 54663-01.

The docket number provides a way for the member of the public to learn about the outcome of the litigation. During oral argument, both parties agreed redacting the petitioner's name to initials without a simultaneous redaction of docket number does not guarantee the petitioner complete anonymity.[6]

While the indirect joining of the petitioner's name through the Federal Register notice and the medical condition of the petitioner's child through the Entitlement Decision may seem to make redaction pointless, the petitioner has

---

information about a petitioner becomes available to the public only in conjunction with a special master's decision, K.O.'s need for anonymity did not arise until after the July 7, 2016 Entitlement Decision.

[6] The petitioner has not requested redaction of the docket number. Pet'r's Resp. to Ct. Order, filed Oct. 26, 2016, at 2-3. Even if she had made such a request, redaction of the docket number is not permitted. R.K. on behalf of A.K. v. Sec'y of Health & Human Servs., 125 Fed. Cl. 276, 281 (2016), citing RCFC 79(a)(2).

persuasively shown otherwise. First, the "fact that an event is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of information." United States Dep't of Justice v. Reporter's Comm., 489 U.S. 749, 770 (1989). Second, the process by which a member of the public could link the two separate pieces of information is, in the petitioner's words, "difficult to imagine." Pet'r's Resp. to Ct. Order at 7.

Consequently, the Vaccine Act's requirement to disclose in the Federal Register actually supports a limited redaction. Because the public still knows (or can learn) who is using the publicly funded court system, redaction of names to initials is not completely contrary to the presumption of public access to decisions of judicial officers.

*Party's Need for Anonymity*. K.O.'s request for a redaction of her name to initials is based primarily on an effort to protect her son, whose name has already been redacted to initials, from future harm if people were to learn about his medical condition. Under penalty of perjury in a detailed affidavit, K.O. attested that she has endeavored to keep information about her son's medical condition private.[7] She stated that she has not disclosed his medical history to his older sister, his teachers, or members of their religious community. Exhibit 21 ¶ 3-4. In addition, K.O. explained that her identity is easy to link with her child's identity. Id. ¶ 5.

By itself, K.O.'s interest in preventing disclosure of medical information is not a persuasive basis for redaction. Doe v. Blue Cross, 112 F.3d at 872 ("the fact that a case involves a medical issue is not a sufficient reason for allowing the use of a fictitious name, even though many people are understandably secretive about their medical problems"); cf. Fed. Rule of Civ. Proc. 5.2(c)(2)(B) (authorizing electronic access to court dispositions of social security appeals, which often contain medical information). Many of the potential "harms" that K.O. asserts could befall her son are speculative.

More persuasive is K.O.'s argument that her identity is tied with her son's identity. The judiciary has afforded special protections to minors by allowing litigation on their behalf to proceed using the minor's initials. See Doe v. East

[7] While K.O.'s son suffered an injury that required approximately ten days of hospitalization, he was "doing extremely well" approximately one year later. Exhibit 6 at 119. His recovery is fortunate. His excellent recovery also means that his peers are highly unlikely to detect anything wrong with him through their observations.

Haven Bd. of Ed., 430 F. Supp. 2d 54, 55 n.1 (2006) (case decided before adoption of Fed. R. Civ. Proc. 5.2(a)). In federal district courts, this protection currently derives from Fed. R. Civ. Proc. 5.2(a)(3). The Court of Federal Claims corresponds. In the Vaccine Program, the privacy provision is Vaccine Rule 16(b) ("If the petition is filed on behalf of a minor, the caption may include only the minor's initials").

Districts court have allowed redaction of the name of a parent to initials when the minor is a plaintiff. A.B. v. Meyer, No. 1:15-cv-157-JD-SLC, 2015 WL 4545872 (N.D. Ind. July 28, 20015). This frequently occurs in the context of claims seeking redress pursuant to the Individuals with Disabilities in Education Act, 20 U.S.C. § 1400. Eley v. District of Columbia, No. 16-cv-806 (BAH/GMH), 2016 WL 6267951 (D.D.C. Oct. 25, 2016) (citing cases).

Here, the same reasoning supports redaction of K.O.'s name to initials. Redacting her name to initials effectuates the policy of allowing her son to proceed by initials.

*Assessment*. Overall, the factors balance in favor of redacting K.O.'s name to initials. The most important factor is that the case involves a minor who has a right to proceed by initials. If the case involved an adult, the outcome would likely be different because of the long-standing tradition of public access to decisions of judicial officers.

In addition, K.O. has presented three affidavits, two from treating doctors and one from herself, describing efforts to keep medical information confidential. If K.O. had not been so protective, then any additional disclosure of information through posting of an unredacted entitlement decision would have caused minimal harm, making redaction less appropriate.

## Conclusion

K.O.'s July 21, 2016 motion for redaction of the July 7, 2016 Entitlement Decision and her August 8, 2016 motion for redaction of the July 25, 2016 Fees Decision are GRANTED. In accord with Vaccine Rule 18(b), these two decisions will be posted on the Court's website with K.O.'s initials. Furthermore, this order, too, will become available to the public with initials after the time for the parties to propose redactions has passed.

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master