# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| K.O., parent of | * |
| A.F., a minor, | * |
| | * |
| Petitioner, | * |
| | * |
| v. | * |
| | * |
| SECRETARY OF HEALTH | * |
| AND HUMAN SERVICES, | * |
| | * |
| Respondent. | * |

* * * * * * * * * * * * * * * * * * *

No. 13-472V
Special Master Christian J. Moran

Filed: August 22, 2017
Reissued: October 3, 2017

Attorneys' fees and costs;
hourly rate for attorney's work
on redaction; consequence of
excessive payment.

Ronald C. Homer and Meredith Daniels, Conway Homer, P.C., Boston, MA,
joined by Mary Ellen Callahan and Adam G. Unikowsky, Jenner & Block,
Washington, DC, for petitioner;
Heather L. Pearlman, United States Dep't of Justice, Washington, DC, for
respondent.

## PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

K.O. requests an amount of final attorneys' fees and costs associated with
her unsuccessful claim that a vaccination harmed her son.  She requests
$25,094.27.  **She is awarded $19,344.47**.  The reasons for the award and the
reasons for the reductions are given below.

---

[1] As permitted by Vaccine Rule 18(b), the petitioner filed a motion to redact her name to
initials.  This motion was granted.

## Procedural History

A.     Entitlement Phase

Ms. O.'s petition alleged that a dose of the pneumococcal conjugate vaccine caused her son, A.F., to develop opsoclonus myoclonus syndrome.  Although Ms. O. filed her petition pro se, Ronald Homer of the law firm now known as Conway Homer, P.C. entered his appearance as counsel of record soon afterwards.  The case advanced through typical stages, such as gathering medical records, obtaining reports from experts, attempting informal resolution, and drafting briefs before a hearing.  The hearing was held on August 13, 2015, after which the parties filed briefs.  A July 7, 2016 decision found that Ms. O. was not entitled to compensation.  2016 WL 7634491.

Shortly before the entitlement decision was issued, Ms. O. had filed a motion for an award of attorneys' fees and costs on an interim basis.  Ms. O.'s request totaled $85,546.75, comprised of $85,146.75 in attorneys' fees and costs plus $400 in costs that Ms. O. bore.  In support of her request for costs, Ms. O. submitted a General Order No. 9 statement, indicating that the only cost she incurred was the filing fee.  A July 25, 2016 decision awarded Ms. O. the amount that she requested.  2016 WL 7634423.

B.     Redaction Phase

On July 21, 2016, Ms. O. filed a 20-page motion to redact the July 7, 2016 Entitlement Decision.  The motion presented more detailed arguments than typically presented in motions to redact filed in the Vaccine Program.  As the motion indicates, Ms. O.'s counsel of record received assistance from two attorneys from Jenner & Block, LLP, Mary Ellen Callahan and Adam G. Unikowsky.

The Secretary responded to the motion to redact, and Ms. O. filed a reply brief.  During an oral argument on October 11, 2016, the attorneys for Ms. O., Ms. Daniels and Mr. Unikowsky, presented her position.  Ms. O. also spoke.  Ms. O.'s motion to redact was granted on November 30, 2016.  2016 WL 7634492.  After a passage of time to allow for appellate review, the Clerk's Office made the underlying Entitlement Decision, Interim Fees Decision, and Redaction Order available to the public by posting on the website for the Court of Federal Claims.

C.    Final Fees

On January 6, 2017, Ms. O. filed a motion for final attorneys' fees and costs. The motion included timesheets from attorneys at Conway Homer for work that they performed after the June 20, 2016 motion for an award of attorneys' fees and costs on an interim basis.  Almost all the attorneys' work concerned the request for redaction and related proceedings.  With respect to Ms. O.'s costs, the motion stated:  "The Petitioner and Counsel Statement was filed on June 20, 2016, as ordered by General Order No. 9.  The petitioner did not incur any additional litigation costs since the filing of her Petitioner and Counsel Statement."  Pet'r's Mot., filed Jan. 6, 2017, at 1-2.  This motion did not include any invoices or timesheets from the attorneys from Jenner & Block, Ms. Callahan and Mr. Unikowsky.

A January 17, 2017 order instructed Ms. O. to clarify whether she is seeking reimbursement for work the Jenner & Block attorneys performed.  On January 24, 2017, Ms. O. responded by filing a Supplemental Application for Petitioner's Costs.  Ms. O. requested $8,658.00 for Mr. Unikowsky's work.  Mr. Unikowsky represented that he billed $740 per hour and spent 13 hours.  He also discounted the bill by 10 percent.  Ms. O. added that she had paid the invoice for $8,658.00 "in full."  Pet'r's Supp'l Mot. at 1 n.1.[2]

The undersigned's review of petitioner's materials raised several issues, which this decision resolves.  These included:

(1) the support for compensating an attorney at a rate of $740 per hour; and

---

[2] Thus, it appears that contrary to the representation in Ms. O.'s January 6, 2017 motion that the petitioner had not incurred additional litigation costs, Ms. O. had, in fact, incurred additional legal fees.  Ms. O.'s April 14, 2017 Response did not satisfactorily explain how this error occurred.  Although the April 14, 2017 Response, which an attorney drafted, states that Ms. O. did not consider submitting Mr. Unikowsky's fee until after the January 17, 2017 order, the April 14, 2017 Response does not state whether the attorneys preparing the final fee application solicited information from Ms. O.  Further, although the petitioner's April 14, 2017 Response suggests that Mr. Unikowsky's status as an attorney who was not attorney of record affected the process, Mr. Unikowsky's status is not material.  Attorneys from the Conway Homer law firm frequently have requested (and received) fees for work performed by attorneys from other firms. A prominent example is fees associated with probate work.  See Pet'r's Resp., dated April 17, 2017, at 8 n.3.  To avoid these miscommunications, the attorneys from Conway Homer are reminded to follow appropriate diligence in preparing fee applications.

(2) how 42 U.S.C. § 300aa–15(e)(3) affects, if at all, Mr. Unikowsky's charges.

Order, issued March 20, 2017.

Ms. O. filed a response to the March 20, 2017 order and the Secretary did as well. With these submissions, Ms. O.'s request for fees and costs is ready for adjudication.

## Analysis

This decision resolves two issues. First, the decision finds a reasonable amount of attorneys' fees and costs using the traditional lodestar method. Because this decision finds that a reasonable amount of attorneys' fees and costs is less than the amount that Ms. O. paid to one attorney, a second issue — how to rectify this overpayment — is also addressed.

### 1. Reasonable Amount of Attorneys' Fees and Costs

To determine a reasonable amount of attorneys' fees and costs under the Vaccine Act, special masters follow the lodestar approach, which involves a two-step process. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1347-48 (Fed. Cir. 2008). The first step involves two elements. The judicial officer determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Therefore, a special master must determine both reasonable hourly rates for attorneys, and reasonable hours for tasks. Second, the judicial officer may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348. Here, because a special adjustment is not needed, the analysis focuses on the lodestar factors (a reasonable hourly rate and a reasonable number of hours).

### A. Reasonable Hourly Rates

Ms. O. seeks compensation for two different groups of attorneys. Her counsel of record came from Conway Homer. In addition, she had assistance from two attorneys from Jenner & Block. The analysis is separate for each law firm.

For Conway Homer, five attorneys, all frequent participants in the Vaccine Program and well-known to special masters, worked on this case. The primary attorney was Meredith Daniels. Besides Ms. Daniels, four other attorneys billed time: Christina Ciampolillo, Joseph Pepper, Kevin Conway, and Mr. Homer.

Collectively, the five attorneys have billed at different rates for work in different years.

The billing rates for these attorneys were found in <u>McCulloch v. Sec'y of Health & Human Servs.</u>, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) (outlining forum rate ranges based on experience), <u>reconsideration denied</u>, No. 09-293V, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015).  The undersigned followed <u>McCulloch</u> regarding these attorneys' rates.  <u>Dorego v. Sec'y of Health & Human Servs.</u>, No. 14-337V, 2016 WL 1635826, at *3 (Fed. Cl. Spec. Mstr. Apr. 4, 2016).  The proposed hourly rates remain reasonable.

In addition to the attorneys from Conway Homer, Ms. O.'s pending motion also seeks an award for activities performed by unnamed paralegals.  Although the undersigned recently discussed this law firm's practice of not identifying its support staff (see <u>Floyd v. Sec'y of Health & Human Servs.</u>, No. 13-556V, 2017 WL 1344623, at *3-4 (Fed. Cl. Spec. Mstr. Mar. 2, 2017)), repeating these concerns is not necessary here.  It is sufficient to note that the proposed hourly rates are consistent with <u>McCulloch</u>.

After the decisions on entitlement and interim fees were issued, Ms. O. sought additional assistance from attorneys from Jenner & Block to support her request for redaction.  Although both Mary Ellen Callahan and Adam G. Unikowsky appear on the memorandum supporting Ms. O.'s request for redaction, Ms. O. has requested compensation only for Mr. Unikowsky's work.

Mr. Unikowsky graduated magna cum laude from Harvard Law School in 2007.  Mr. Unikowsky acted as a law clerk twice, once for a judge of the United States Court of Appeals for the District of Columbia Circuit and once for a justice of the United States Supreme Court.  He is currently a partner at Jenner & Block. Pet'r's Resp. at 4-6.[3]

Mr. Unikowsky has charged Ms. O. $740 per hour.  This rate easily exceeds by twofold the maximum rate of compensation found in <u>McCulloch</u> for attorneys with similar experience performing similar work.

---

[3] Petitioner's Response includes an excerpt from the Jenner & Block website with Mr. Unikowsky's background and experience (tab A) and a January 13, 2014 article about billing rates for Jenner & Block from the National Law Journal (tab B).  The Petitioner's Response does not include an affidavit from Mr. Unikowsky.

Ms. O. has not justified resorting to another attorney whose hourly rate is significantly more expensive. Attorneys from Conway Homer (or its predecessor) have previously filed motions for redaction. E.g. <u>W.C. v. Sec'y of Health & Human Servs.</u>, 100 Fed. Cl. 440, 459 (2011) (successfully arguing in a motion for review that the special master should have granted redaction), <u>aff'd in non-relevant part</u>, 704 F.3d 1352 (Fed. Cir. 2013); <u>A.K. v. Sec'y of Health & Human Servs.</u>, No. 09-605V, 2013 WL 322918 (Fed. Cl. Spec. Mstr. Jan. 17, 2013). The work from the attorneys from Conway Homer demonstrate their competence in this general subject matter. Moreover, in Ms. O.'s case specifically, while the quality of the July 21, 2016 redaction memorandum was better than most, the motion was not so exceptionally good that it broke new ground. From experience in other cases, the undersigned was familiar with most, if not all, of the cases Ms. O. cited.

In short, for the services of an attorney preparing a motion for redaction, the rates set in <u>McCulloch</u> remain reasonable. See <u>Rodriguez v. Sec'y of Health & Human Servs.</u>, 632 F.3d 1381, 1385 (Fed. Cir. 2011) (because work in the Vaccine Program is less complex, attorneys have relatively lower rates). Under the <u>McCulloch</u> analysis, an attorney with 8-10 years of experience is compensated at a rate of $275-$350 per hour. Mr. Unikowsky's qualifications suggest that he should be compensated at the maximum rate in this range. Therefore, a reasonable rate of compensating for Mr. Unikowsky's work in assisting with a motion for redaction is $350.00 per hour.[4]

### B. Reasonable Number of Hours

The second element in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary. <u>Saxton v. Sec'y of Health & Human Servs.</u>, 3 F.3d 1517, 1521 (Fed. Cir. 1993). The undersigned conducted a line-by-line analysis of all the entries documented in the timesheets, despite the fact that when making reductions, a line-by-line evaluation of the fee application is not required. <u>McCulloch</u>, 2015 WL 5634323, at *5 (quoting <u>Wasson v. Sec'y of Health & Human Servs.</u>, 24 Cl. Ct. 482 (1991)).

---

[4] It may be worth repeating that the hourly rate for Mr. Unikowsky's work is for his work connected with a motion for redaction in the Vaccine Program. See <u>Blum</u>, 465 U.S. at 896 n.11 (1984) (stating that a rate is reasonable when it is aligned with the prevailing rate in the community for similar services). The reasonableness of Mr. Unikowsky's rate in other areas of law in which he practices, such as advocacy before the Supreme Court, is not in question here. See <u>Howell v. Howell</u>, 137 S.Ct. 1400 (2017) (an example of a case in which Mr. Unikowsky successfully argued at the Supreme Court).

For the Conway Homer firm, some hours requested are excessive.  Mr. Homer performed work that Ms. Daniels was capable of performing.  Mr. Pepper and Ms. Ciampolillo, two associates, largely duplicated Ms. Daniels's work. Paralegals also charged for secretarial tasks.  Under these circumstances, a reduction of 10 percent is reasonable.  See Abbott v. Sec'y of Health & Human Servs., No. 10-495V, 2017 WL 2226614 (Fed. Cl. Spec. Mstr. Apr. 26, 2017), mot. for rev. filed (May 26, 2017).

Mr. Unikowsky's invoice indicates that he spent 13 hours, mostly drafting the motion to redact.  Pet'r's Supp'l Appl'n, filed Jan. 24, 2017, tab A.  The time spent is on the higher side of reasonable but still reasonable.  As previously mentioned, the quality of Ms. O.'s motion to redact was better than average.  It seems likely that Mr. Unikowsky's time contributed to this good, but not extraordinary, product.  Thus, no adjustment is made to the number of hours Mr. Unikowsky requested.

C.  Summary

For the work professionals from Conway Homer performed, a reasonable amount of compensation is $14,776.20.  In addition, the amount of costs the law firm incurred ($18.27) is also reasonable.  For the work Mr. Unikowsky performed, a reasonable amount of compensation is $4,550.00, which is $4,108.00 less than the amount Ms. O. has already paid.  This overpayment creates a second issue.

## 2. Consequence of a Client's Overpayment

The Vaccine Act provides:  "No attorney may charge any fee for services in connection with a petition filed under section 300aa-11 of this title which is in addition to any amount awarded as compensation by the special master or court under paragraph (1)."  42 U.S.C. § 300aa–15(e)(3).  The March 20, 2017 order requested the parties' positions regarding this section.

Ms. O. seems to present two arguments for why this provision should not limit the amount of money Mr. Unikowsky has charged her.  First, Ms. O. appears to argue that because Mr. Unikowsky's work concerned a motion for redaction pursuant to section 12(d)(4), his work was "not in connection with § 300aa-11, the entitlement portion of petitioner's case."  Pet'r's Resp. at 9.  This argument is not consistent with the statutory language and is not consistent with the invoicing practices of the Conway Homer attorneys.

Section 15(e)(3) restricts an attorney's charges "for services in connection with a petition filed under section 300aa-11." The motion for redaction was a service in connection with a petition Ms. O. filed. Counsel of record for Ms. O. seems to recognize that attorneys representing petitioners in the Vaccine Program may seek an award for their work in preparing a motion for redaction because almost all of the time listed in the invoice from Conway Homer is for work related to redaction. See Pet'r's Mot., tab A. If counsel were serious that redaction was not connected to the petition, then Mr. Homer should not have sought fees for the work his associates and he performed during the redaction phase.

Ms. O.'s second point is similarly unpersuasive. Ms. O. points out that she has already paid the invoice from Jenner & Block. Pet'r's Resp. at 9-10. While this undocumented assertion is assumed to be correct, the legal significance is not readily apparent. It cannot be true that an attorney can avoid the congressionally-imposed restriction in section 15(e)(3) simply by collecting money from a client before submitting the fee application. See Carter v. Sec'y of Health & Human Servs., No. 04-1500V, 2007 WL 2241877, at *6 (Fed. Cl. Spec. Mstr. July 13, 2007) ("an unreasonable expert fee is not converted to a reasonable fee because it was already paid"). Consequently, Mr. Unikowsky should have complied with section 15(e)(3) and not charged more than the special master awarded.

A remedy for Mr. Unikowsky's violation of section 15(e)(3) is to order Mr. Unikowsky and/or Jenner & Block to refund $4,108.00 to Ms. O. This refund will restore compliance with section 15(e)(3). See Beck v. Sec'y of Health & Human Servs., 924 F.2d 1029, 1036 (Fed. Cir. 1991) (affirming a decision by a Claims Court judge to invalidate an attorney's fee agreement and stating "the Claims Court was certainly authorized to specify how much compensation was to be paid to whom").[5]

Further, because Mr. Homer was (and is) counsel of record for Ms. O., he is ultimately responsible for all actions taken by Ms. O. in connection with her litigation at the Court of Federal Claims. See Vaccine Rule 14(b); Riggns v. Sec'y of Health & Human Servs., No. 99-382V, 2009 WL 3319818, at *14 (Fed. Cl. Spec. Mstr. June 15, 2009) ("Counsel has a duty to monitor the fees and costs

---

[5] When Beck was decided, special masters issued "reports," which judges of the Claims Court (as the Court of Federal Claims was then called) could adopt (or reject). The Omnibus Budget Reconciliation Act of 1989; Pub.L. No. 101-239, § 6601(g)-(h); 103 Stat. 2106, 2288-90 (codified at 42 U.S.C. §300aa-12(d)(3)(A), 12-(e)) replaced that system with one in which special masters issue "decisions" that are subject to a motion for review.

incurred in a case"), <u>mot. for rev. den'd</u>, 106 Fed. Cl. 600 (2009) (withdrawn from bound volume), <u>aff'd</u>, 406 Fed. App'x 479 (Fed. Cir. 2011).  Mr. Homer should have communicated the Vaccine Act's restriction on attorneys' fees to Mr. Unikowsky.  However, neither Mr. Homer's invoice nor Mr. Unikowsky's invoice includes any suggestion that this conversation took place.  At best, the invoice from Conway Homer indicates that on July 20, 2016, Ms. Daniels spoke with Ms. Ciampolillo for 0.4 hours about an "interpretation of sec. 15 for privacy atty."  Also on July 20, 2016, Ms. Daniels emailed the "privacy attorney" on multiple times.  But, Ms. Daniels's description of her activities do not indicate that the topic of these emails concerned the statutory limits on attorney compensation.

Consequently, to ensure that Ms. O. receives the benefit of section 15(e)(3), she is ordered to file a status report in 30 days, confirming that Mr. Unikowsky and/or Jenner & Block have refunded $4,108.00 to her.  This status report shall include a statement made under penalty of perjury from either Mr. Unikowsky or an appropriate official from Jenner & Block, such as an accountant, that Mr. Unikowsky and/or Jenner & Block have refunded the money.  Until Mr. Unikowsky and/or Jenner & Block have refunded the money, the Secretary's obligation to pay the attorneys' fees and costs to Conway Homer is suspended.

Accordingly, the following is ORDERED:

1. A reasonable amount of attorneys' fees and costs is **$19,344.47**.  In the absence of a motion for review filed pursuant to RCFC, Appendix B, the Clerk's Office is directed to enter judgment in this amount.[6]

2. Mr. Unikowsky and/or Jenner & Block shall refund **$4,108.00** to Ms. O. within 30 days.

3. Within 45 days, Ms. O. shall file a status report confirming the refund from Mr. Unikowsky and/or Jenner & Block.

4. The Secretary's obligation to satisfy any judgment based upon this decision is suspended until after Ms. O. files the confirming status report.  After Ms. O. confirms that she has received a refund from Mr.

---

[6] Pursuant to Vaccine Rule 11(a), the parties can expedite entry of judgment by each party filing a notice renouncing the right to seek review by a United States Court of Federal Claims judge.

Unikowsky and/or Jenner & Block, the Secretary shall use appropriate diligence in making payment.

5.  The Secretary shall pay the judgment of $19,344.47 as follows:

   a.  A lump sum payment of $14,794.47 in the form of a check made payable jointly to Conway Homer and Ms. O.

   b.  A lump sum payment of $4,550.00 in the form of a check made payable to Ms. O. alone.  This amount is to reimburse her for the reasonable attorney's fee she has already paid to Mr. Unikowsky and/or Jenner & Block.

**IT IS SO ORDERED**.

<u>s/Christian J. Moran</u>
Christian J. Moran
Special Master